UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Invictus Lighting LLC,<br><br>Plaintiff,<br><br>v.<br><br>Signify North America Corporation,<br><br>Defendant. | Case No. 3:26-cv-1166<br><br>**Jury Trial Demanded**<br><br>**COMPLAINT** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Invictus Lighting LLC d/b/a Invictus Lighting ("Invictus"), for its Complaint against Defendant Signify North America Corporation ("Signify"), alleges as follows:

**THE PARTIES**

1. Plaintiff Invictus is a limited liability company registered in North Carolina with its principal place of business at 1260 25th Street Place Southeast Hickory, NC 28602.

2. Defendant Signify North America Corporation is a corporation organized under the laws of Delaware, with its principal place of business located at 200 Franklin Square Drive, Somerset, NJ, 08873. Signify touts itself as "the world leader in light". Its global brands include Philips.

**JURISDICTION AND VENUE**

3. This lawsuit is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

1

5.     Subject-matter jurisdiction over Invictus' claims is conferred upon this Court by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (patent jurisdiction).

6.     This Court has personal jurisdiction over Defendant because Defendant is subject to general and specific jurisdiction in the state of New Jersey. Defendant is subject to personal jurisdiction because Defendant has transacted business within New Jersey and committed acts of patent infringement in New Jersey. Defendant has made certain minimum contacts with New Jersey such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice. Defendant regularly conducts business in New Jersey, including by marketing, selling, and/or offering for sale accused LED lighting products through its website, https://www.lighting.philips.com/main/prof/led-lamps-and-tubes/led-tubes, which is accessible throughout the United States, including New Jersey, and through distributors located in New Jersey, such as Home Depot and Graybar. Defendant inserts the accused products into the stream of commerce, with the knowledge and intention that they be offered and sold to, and used by, New Jersey residents. Defendant also maintains an office at 200 Franklin Square Drive, Somerset, New Jersey 08873. The exercise of personal jurisdiction comports with Defendant's right to due process because, as described below, Defendant has purposefully availed itself of the privilege of conducting activities within New Jersey such that it should reasonably anticipate being hailed into court here. As alleged herein, acts by Defendant in this District have caused injury to Blackbird Technologies.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 (b) and (c) and § 1400(b) because Defendant transacts business within this District, has a regular and established place of business in this District, and offers for sale in this District products that infringe U.S. Patent No. 9,801,245.

**BACKGROUND**

8. Invictus is a U.S.-based light emitting diode ("LED") lighting technology company headquartered in Hickory, North Carolina which offers unique, efficient, and cost-effective lighting fixtures and retrofits. Founded in 2015 by G. Erik McMillan, the sole inventor of U.S. Patent No. 9,801,245 ("the 245 Patent"), attached hereto as Exhibit 1, and his wife Kisa McMillan, Invictus has pioneered innovations in energy-efficient lighting systems. Its flagship feature—"wattage selectability"—has been broadly adopted within the industry and recognized by the Design Lights Consortium ("DLC") as a whole new product category: "Field Adjustable Lighting."

9. Wattage selectability enables a single lighting fixture to replace an entire range of wattage-specific models, providing cost savings, inventory simplification, and enhanced regularly compliance. This innovation is reflected in the claims in the 245 Patent and was utilized by Invictus in lighting installations for customers and locations including the Department of State, Fort Meade, the Great Lakes Naval Base.

10. Despite an onslaught on infringers, including Defendant, Invictus continues to offer a suite of products for sale that embody the invention of the 245 Patent (see Watt Selectable products https://www.invictuslighting.com/catalog). All of Invictus' research and development (and other technical work, such as inspection, testing and quality control) takes place in the United States.

**PRIOR ART APPROACH AND TECHNICAL BREAKTHROUGH OF THE 245 PATENT**

11. Prior to the invention described in the '245 Patent, the lighting industry predominantly relied on either fixed wattage outputs or dimmer-based systems that lacked maximum output control. The Reid reference and other prior art explicitly discouraged combining wattage limiting functions with 0–10V dimmer systems in a manner that would enable coordinated control. The '245 Patent teaches away from those systems by enabling adjustable maximum wattage selection that works in

harmony with dimming functionality, thus allowing dynamic user interaction while ensuring that fixtures do not exceed preselected maximum thresholds. This breakthrough enabled significant flexibility and efficiency, reducing SKU count, streamlining installation, and maintaining regulatory compliance.

## PATENT-IN-SUIT

12. Nearly eight years before the filing of this complaint, on October 24, 2017, the United States Patent and Trademark Office ("USPTO" or "PTO") duly and legally issued U.S. Patent No. 9,801,245 ("the 245 Patent"), titled "Light Fixture."  The 245 Patent results from a continuation of Application No. 14/444,997 ("the 997 Application") originally filed with the United States on July 28, 2014. The 997 Application itself claimed priority to two provisional applications filed on July 26, 2013 and March 11, 2014, respectively. The 245 Patent names Invictus' founder and CEO G. Erik McMillan as its sole inventor. The 245 Patent will not expire until July 28, 2034.

13. The 245 Patent generally describes an apparatus that is configured to be installed with a predetermined maximum wattage output wherein the maximum wattage output can be selected by the installer. The light fixture includes a housing and an adjustable resistor. A light source is electrically connected to the adjustable resistor, and the adjustable resistor itself is associated with the housing. See 245 Patent, Abstract & 3:1-7.

14. The invention can be better understood in conjunction with the circuit 10 illustrated in Figure 1 of the 245 Patent:



Patent, FIG. 1.

15.	The circuit 10 includes a dimming controller or control module 12 that may be, for example, a 0-10V pulse-width modulation (PWD) dimmer. The PWM controls the downstream pulse of power from the switch box 15 to where a switch box 15 includes the dimming controller 12. The dimming controller 12 may be adjusted by turning off of a knob, to select a desired dial level, or by smart adjustments that may be effectuated by selecting a desired dimming level on a touch-responsive control panel. The circuit 10 may further include an adjustable resistor 14. The adjustable resistor 14 may be connected downstream of, and in series connection with, the dimming controller 12 and switch box 15. See generally 245 Patent, 5:1-42 & Fig. 1.

16.	The circuit 10 may further include a driver 16 connected downstream and in series with the adjustable resistor 14. The driver 16 is an internal mechanism that regulates power to a light source and is used with LED light sources to vary the power supplied to the LED as the LED

properties change with temperature changes. The circuit 10 may include a light connected downstream and in series with the driver 16. The relevant light may be any appropriately configured light, including an LED 20, a fluorescent tube 22, and/or an incandescent light 24, each of which are illustrated in Figure 1. See generally 245 Patent, 5:42-59 & Fig. 1.

17. The adjustable resistor 14 may be enclosed within the light assembly when installed and therefore not accessible to outside without removal of the light. This allows the installer to adjust the wattage and lumen output at the time of installation, but does not allow subsequent altering of the wattage and lumen output without some barrier to doing so – namely, removal of the light assembly to access the linear resistor. Alternatively, adjustable resistor 14 may be selectively adjustable by a smart control system or have authentication/authorization permissions associated with an adjustment. See generally 245 Patent, 5:60-6:3 & Fig. 1.

18. By using the adjustable resistor 14, the purchaser, installer, or owner is no longer confined to the factory pre-sets for wattage and lumen output of industry-standard outdoor LED light fixtures. For instance, instead of purchasing ten different LED roadway lamps of different pre-set wattages for ten different installation points along a street being outfitted with energy efficient and long-life LED light fixtures (i.e., ten non-optimal LED roadway lamps), the purchaser can purchase a single LED roadway lamp for all installation points and "tune" the wattage and lumen output of each light fixture to the optimal wattage and lumen output for each installation point. The invention of the 245 Patent thus allows for near "infinite wattage" and lumen control adjustment up to the maximum rated output for the LED light array of the light fixture. See generally 245 Patent, 6:4-23 & Fig. 1.

19. To enable flexible and precise control over a light fixture's power output, the invention described in the 245 Patent includes a hybrid lighting control system in which a wattage

limiter (e.g., an adjustable resistor or selector) operates in tandem with a dimmer control, such as a standard 0–10V dimmer. The wattage limiter establishes a maximum wattage output for the fixture, while the dimmer control provides an adjustable input signal, typically governed by user selection, to vary the lighting level within that preset range. The light fixture's LED driver interprets the signal resulting from this interplay, such that the system collectively enforces a dynamic yet bounded lighting behavior. In this cooperative calibration, neither the wattage limiter nor the dimmer unilaterally dictates output; rather, they function in a complementary manner: the dimmer offers granular control over brightness, while the wattage limiter ensures that output remains within the selected maximum threshold. This architecture allows for both configurability at installation and ongoing dimming flexibility, while ensuring consistency with energy-saving and application-specific requirements. See generally 245 Patent, 6:4-23 & Fig. 1.

## INFRINGEMENT ALLEGATIONS

20. Signify manufactures, uses, offers for sale, sells, and/or imports into the United States numerous lighting products that directly infringe one or more claims of the 245 Patent.

21. The "Accused Products" include, but are not limited to, the following wattage-selectable models:

- Day-Brite NWL Utility Wrap Series (e.g., NWL21525L8CST, NWL43050L8CST)
- Day-Brite SDS LED Strip Series (e.g., SDS42448L8CST, SDS21224LCST, SDS84998LCST)
- DSRT Center Basket Troffer Family (e.g., 2DSRT3050LCS, 2DSRT4060LCS)
- FluxPanel Selectable LED (SBP) Series
- SlimFlood Selectable Outdoor Luminaires

22. These Accused Products embody the '245 Patent by utilizing internal selector switches to define a maximum power output range while supporting 0-10V dimming for further dynamic control. These characteristics are consistent with, and embody, the system and method claimed in the 245 Patent, including a light fixture with a housing, a driver, an adjustable resistor or selector integrated into or on the housing, and dimmer compatibility to allow for further dynamic control of light output. The selector defines a maximum power output range, and the 0–10V dimming control allows the user to adjust brightness within that defined range. The LED driver interprets the resulting signal accordingly.

23. On information and belief, the Accused Products utilize a Field Adjustable Wattage Selector ("FAWS"), pictured on the right, that appears identical to Invictus' switch, pictured on the left:

 

*See* Phillips Lighting, FAWS, https://www.assets.lighting.philips.com/is/content/PhilipsLighting/comf7025600-pss-en_us (last visited February 2, 2025).

24. Signify's marketing materials, datasheets, and installation manuals repeatedly highlight these characteristics. Signify has had knowledge of the '245 Patent and its claimed

invention at least as of the filing and issuance date, if not earlier. Notwithstanding this knowledge, Signify continues to make, use, test, sell, offer for sale, and/or import products that infringe the '245 Patent.

25. Accordingly, Signify directly infringes at least claims 1, 2, 7, and 8 of the '245 Patent in violation of 35 U.S.C. § 271(a), both literally and under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing products including but not limited to those identified above.

26. Invictus has been harmed by Signify's unlawful conduct and seeks damages adequate to compensate it for such infringement, in no event less than a reasonable royalty under 35 U.S.C. § 284. Upon information and belief, Signify's continued infringement is willful, deliberate, and in reckless disregard of Invictus's patent rights.

27. Invictus further seeks enhanced damages, attorneys' fees, costs, and injunctive relief under 35 U.S.C. §§ 283–285.

## CLAIM ONE
### (Infringement of the 245 Patent)

28. Invictus repeats and realleges all preceding paragraphs, as if fully set forth herein.

29. Signify manufactures, uses, offers for sale, sells, and/or imports into the United States numerous lighting products that directly infringe one or more claims of the 245 Patent, including without limitation products within the Accused Products.

30. The Accused Products incorporate selectable wattage functionality through internal selector switches, support 0-10V dimming, and rely on integrated LED drivers that regulate power delivery based on the combination of the selector setting and the dimming input.

31. Signify's marketing materials, datasheets, and installation manuals repeatedly highlight these characteristics.

32. Signify has had knowledge of the 245 Patent and its claimed invention at least as of the filing and issuance date, if not earlier. Notwithstanding this knowledge, Signify continues to make, use, test, sell, offer for sale, and/or import products that infringe the 245 Patent.

33. Accordingly, Signify directly infringes at least claims 1, 2, 7, and 8 of the 245 Patent in violation of 35 U.S.C. § 271(a), both literally and under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing products including but not limited to those identified above.

34. Invictus has been harmed by Signify's unlawful conduct and seeks damages adequate to compensate it for such infringement, in no event less than a reasonable royalty under 35 U.S.C. 284. Upon information and belief, Signify's continued infringement is willful, deliberate, and in reckless disregard of Invictus's patent rights.

35. Invictus further seeks enhanced damages, attorneys' fees, costs, and injunctive relief under 35 U.S.C. §§ 283-285.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

a. Entry of judgment declaring that Defendant infringes one or more claims of the Patent-in-Suit;

b. Entry of judgment declaring that Defendant's infringement of the Patent-in-Suit is willful;

c.  An order awarding damages sufficient to compensate Plaintiff for Defendant's infringement of the Patent-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

d.  An accounting for acts of infringement;

e.  Such other legal and equitable relief which may be requested and to which the Plaintiff is entitled; and

f.  Such other and further relief as the Court deems just and proper.

Dated: February 5, 2026

Respectfully submitted,

*/s/ David L. Hecht*
David L. Hecht
dhecht@hechtpartners.com
HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 851-6821

*Counsel for Plaintiff Invictus Lighting LLC*